UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| **DIAMOND POWELL**<br><br>Plaintiff,<br><br>v.<br><br>**SUSDEWITT MANAGEMENT, LLC d/b/a MCDONALD'S,**<br><br>Defendant. | **Case No.:**<br><br>**COMPLAINT AND JURY DEMAND** |

## Complaint

Plaintiff **DIAMOND POWELL,** by and through her attorneys, CAIR National Legal Defense Fund, brings this action against **SUSDEWITT MANAGEMENT, LLC d/b/a MCDONALD'S** ("McDonald's"), for compensatory and punitive damages, declaratory and injunctive relief, pre-judgement and post-judgement interest, costs and attorneys' fees for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII") and violations of the Maryland Fair Employment Practices Act (FEPA) §20-602, Annotated Code of Maryland committed when Defendant refused to provide reasonable religious accommodations to take short prayer breaks during work despite lack of hardship or cause, subjected her to harassment on the basis of sex and religion, amounting to a hostile work environment, and forced her to resign.

1

## Jurisdiction and Venue

1. Plaintiff's claim for discrimination on the basis of religion and sex in violation of Title VII is brought under 42 U.S.C. §2000e-5 and the Maryland Fair Employment Practices Act (FEPA) §20-602, Annotated Code of Maryland.

2. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and supplemental jurisdiction over the state law claims under 28 U.S. Code § 1367.

3. This Court has personal jurisdiction over Defendant because Defendant resides and conducts business in this judicial district.

4. Plaintiff's claims for attorneys' fees and costs are predicated upon Title VII, 42 U.S.C. §2000e-2(m), §20-602, Annotated Code of Maryland, and Fed. R. Civ. P. 54.

5. Venue is proper under 28 U.S.C. § 1391 as to Defendant because Defendant operates within the geographical boundaries of this Judicial District, and a substantial part of the events or omissions giving rise to the claims occurred within the District.

## Parties

6. Plaintiff Diamond Powell is a Muslim woman and was at all relevant times an employee of Defendant McDonald's.

7. Defendant McDonald's is a for-profit corporation incorporated under the laws of Maryland (Business Entity No. W06545164). Defendant McDonald's headquarters and principal office is located at 4200 Forbes Blvd., Lanham, MD 20706. Defendant McDonald's regularly and systematically conducts business in the State of Maryland, within this district. Defendant McDonald's was at all relevant times an "employer" as the term is defined in Title VII.

**Administrative History**

8. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") on October 24, 2018 and the Maryland Commission on Civil Rights (the "MCCR").

9. Plaintiff received a Notice of Right to Sue on May 18, 2020.

10. This Complaint is being timely filed within 90 days from the date Plaintiff received the Notice of Right to Sue from the EEOC.

11. Plaintiff has exhausted her administrative remedies.

**Factual Background**

12. Powell is a Muslim woman who wears a hijab, a religious head covering, in accordance with her sincerely-held religious beliefs. Powell has a sincerely-held religious belief that she must pray five times a day during prescribed prayer times. These prayers occur (1) after dawn – *fajr,* (2) early afternoon– *dhuhr,* (3) late afternoon – *asr,* (4) after sunset – *maghrib,* and (5) late evening – *isha.* Prayers take approximately five to ten minutes to complete.

13. Powell is currently pursuing her master's degree in branding and copywriting. She graduated from Morgan State University with a degree in public relations and advertising.

14. Powell first learned about an open position with Defendant McDonald's when she attended a job fair at the National Black Caucus Convention. There, Powell met the Director of Operations Tim Larimer and Owner Isaac Green. They offered her a Manager in Training position. At that time, Powell was Christian.

15. Defendant McDonald's employed Powell from August 2016 until April 2017 without incident.

3

16. Powell converted to Islam in February 2017.

17. Prior to converting to Islam and her conversion becoming known to employees when she began wearing hijab to work in May 2017, Powell enjoyed her employment. She was a model employee who always sought to promote a positive environment for her co-workers and subordinates. She often used personal funds on rewards for employees, décor for the employee board, and provided transportation to fellow co-workers.

18. Powell began wearing the hijab around May 2017, in accordance with her new sincerely-held religious beliefs. She also wore an *abaya*, a modest dress worn by Muslim women.

19. Prior to becoming visibly Muslim and requesting a religious accommodation to pray and wear hijab from Defendant in May 2017, Powell had never encountered any issues with her coworkers or management.

20. However, shortly after beginning to wear the hijab at work and submitting a religious accommodation to take short prayer breaks and wear hijab, Powell was subjected to a barrage of harassment from management and coworkers.

21. Defendant maintains two locations at Baltimore Washington International Airport (BWI) at Concourse A/B and Concourse D. At the time Powell submitted her religious accommodation request, she worked at the Concourse A/B location.

22. In May 2017, Powell submitted religious accommodation requests to wear her hijab and take short prayer breaks verbally to the general manager.

23. The general manager granted her request to wear hijab.

24. However, as soon as she began wearing the hijab, co-workers learned Powell was Muslim and began harassing her because of her sex and religion.

25. For example, a shift manager harassed Powell, "Oh you're Muslim? I never had Muslim pu**y before," "I bet that works really tight" and "I'd tear that up." The shift manager had a reputation for harassing female employees, but his harassment of Powell became significantly worse when he learned about her religion. Powell demanded he stop harassing her.

26. Another manager asked Powell if she had a husband at least one or two times a week.

27. Several members of management and coworkers asked Powell if she was a virgin.

28. On one occasion, the general manager showed employees the emergency exit route and stated that if there was a terrorist attack, and if general manager wore a hijab, she would take her hijab off.

29. A coworker harassed Powell, stating "Where's your night gown?" This was in reference to Powell's *abaya*.

30. Management was aware that Powell was being subjected to ongoing harassment – which was happening publicly. However, management refused to address the hostile environment Powell was being subjected to.

31. Moreover, Powell repeatedly reported the harassment to supervisors, including the general manager. Again, management did nothing to stop the harassment.

32. Powell reported harassment on, but not limited to, August 2017, September 21, 2017, September 22, 2017, and April 22, 2018.

33. The general manager initially granted Powell's request to take short prayer breaks on condition that she inform other employees before leaving to pray.

34. Powell began taking short prayer breaks and notified other employees as she was instructed to do.

35. Powell took prayer breaks as quickly as possible and without causing a burden to her employer. Her prayer breaks lasted no longer than a typical bathroom break.

36. Powell prayed in a quiet area right next to McDonald's Concourse A/B location.

37. Upon learning where she was performing her prayers, the general manager prohibited Powell from continuing to pray at that location and instructed her instead to pray in the "stock room" area, between moving rows of shelves.

38. In order to access a shelf, one must slide another out of the way. Employees attempting to access the shelves while Powell was praying would risk closing the shelves on Powell causing a significant safety concern.

39. Further, this area was dirty, with wet floors, had garbage accumulating from the drainage, and was susceptible to flooding.

40. Powell has a sincerely-held religious belief that prayers must be conducted in a clean area, otherwise the prayer is negated. Further, there must be adequate space to perform the prostration – which there was not in the stock room.

41. Because Powell could not perform her prayers in the stock room area due to safety, health and religious reasons, she continued to pray in the quiet area right next to Defendant's Concourse A/B location.

42. This continued without incident until September 21, 2017, when the general manager altogether revoked her request to take a prayer break claiming, "God will understand."

43. By doing so, the general manager forced Powell to choose between continuing her employment with McDonald's or sacrificing her sincerely-held religious beliefs.

44. After her prayer accommodation was revoked, one day Powell waited until the rush died down and took a 10-minute break – which is akin to a short smoke break or bathroom break that other employees regularly take without issue. In response, the general manager reprimanded Powell and forced her to clock out of her shift and go home.

45. That same day, a manager told her to "take that hoodie off your head" and another shift manager told her "you don't have to wait for God to wake up for you to pray."

46. Later that evening, Powell filed a complaint with the HR Assistant Rosanna Christopher.

47. On September 22, 2017, Powell disclosed concerns to the general manager and the franchise owner regarding the lack of safety, inadequate space, and unsanitary conditions provided in the "stock room" that do not comply with her sincerely-held religious beliefs. Powell also notified the franchise owner during this meeting about the consistent sexual harassment towards her.

48. The owner forbade Powell from praying inside any of the stores because he did not want people to think the store was a sanctuary and because he did not want to offend non-religious employees.

49. The owner assigned the general manager to coordinate a prayer schedule with Powell, which the general manager refused to do.

50. Instead, the general manager harassed Powell because of her religious beliefs.

51. The general manager made derogatory comments towards Powell such as: "you know how Baltimore girls are, they'll be in a relationship with a Muslim guy and they'll be Muslim but when they aren't with the guy anymore, they aren't gonna be Muslim anymore."

52. Powell filed complaints regarding denial of religious accommodations at Concourse A/B on, but not limited to, September 21, 2017, September 22, 2017, and October 3, 2017.

53. McDonald's management failed to take action to resolve any of the complaints Ms. Powell filed.

54. On October 5, 2017, management moved Powell to the Concourse D location, which was smaller than the previous Concourse A/B location, because the owner wanted Powell to learn Islam from the Concourse D manager.

55. The Concourse D manager accommodated Powell's request to take short breaks by scheduling her shifts such that only one prayer fell during a given shift.

56. Powell prayed in an open space by Defendant's concourse D location.

57. This accommodation worked without issue until the director revoked Powell's accommodation. Sometime between October and November 2017, Powell met with the director and explained the arrangement that she and the Concourse D manager had agreed upon.

58. The director revoked the accommodation, claiming without explaining that the accommodation would not work for McDonald's.

59. The director permitted Powell to pray on the condition that she continue to monitor the store while she was praying and that she stop praying if there was an incident that occurred – a condition that makes it impossible for Powell to perform her prayers in accordance with her sincerely-held religious beliefs

60. On January 12, 2018, a supervisor reprimanded Powell for taking a brief prayer break because he stated there was no other manager on shift to cover for Powell during her brief prayer break.

61. Defendant accommodated restroom breaks, smoke breaks, and brief lunch breaks of other employees without issue and did not condition those breaks on other employees' agreement to end their breaks in the manner Defendant conditioned the equivalent-in-time breaks Powell sought to perform her prayers.

62. On January 17, 2018, management informed Powell that the formerly granted religious accommodations were not going to be honored moving forward.

63. The Concourse D manager told Powell that she would be modifying Powell's schedule in accordance with McDonald's needs and would no longer accommodate Powell's prayers. She stated, "I'm Muslim too and I pray when I go home."

64. On January 23, 2018, counsel for Powell contacted Defendant requesting that Powell's brief prayer breaks be accommodated. However, Defendant refused.

65. Powell had filed multiple complaints throughout her employment.

66. Powell notified management regarding the denial of religious accommodations at the Concourse D location verbally throughout her time there, and on, but not limited to, January 23, 2018, and on April 22, 2018. Defendant never provided reasonable religious accommodations.

67. By refusing to accommodate Powell's sincerely-held religious beliefs that require her to pray during prescribed time frames, McDonald's unlawfully forced Powell to choose between continuing her employment or sacrificing her faith.

68. Powell had no choice but to resign on April 22, 2018.

## Claims for Relief

### Count I
### Failure to Accommodate
(Violation of Title VII and Maryland Fair Employment Practices Act)

69. Powell incorporates the allegations throughout the Complaint.

70. Defendant violated Title VII and the Maryland Fair Employment Practices Act by (1) refusing Powell reasonable religious accommodation to take short prayer breaks during her shifts and (2) subjecting Powell to harassment on the basis of her religion.

71. Powell has a sincerely-held religious belief that she must pray five times a day at prescribed prayer times. These prayers occur (1) after dawn – *fajr,* (2) early afternoon – *dhuhr,* (3) late afternoon – *asr,* (4) after sunset – *maghrib,* and (5) late evening – *isha.* Prayers take approximately five to ten minutes to complete.

72. Defendant was aware that Powell's prayer breaks required an accommodation. Powell had requested such accommodations repeatedly, explained at various times why she could not pray in the dirty and dangerous stock room, and let it be known to Defendant's supervisors that the short breaks she sought from Defendant were for the purpose of performing her prayers.

73. Powell's request does not constitute undue hardship upon Defendant or otherwise affect Defendant's business operations. Other employees took equivalent-in-time

breaks for nonreligious reasons that Defendant allowed, and fast food restaurants across the country grant Muslim workers the short prayer breaks Defendant did allow Powell to take.

74. Powell could have continued to work and perform the duties of her job had her request for an accommodation been honored. Defendant did not engage in any interactive or good faith process regarding Powell's sincerely-held religious beliefs. Instead Defendant refused to provide reasonable religious accommodations.

75. Defendant allowed other employees short bathroom and smoke breaks, but denied Powell's short prayer breaks. In doing so, Defendant treated breaks taken for religious purposes differently than breaks taken for nonreligious purposes.

76. As a result of the failure to accommodate and hostile work environment, Powell was forced to resign.

77. The willful, intentional, and unlawful actions violate the laws and regulations of the State of Maryland, including, without limitation, the Maryland Fair Employment Practices Act, and the laws and regulations of the United States, including, without limitation, 42 U.S.C. §§ 12101, *et seq.*

78. Powell requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deems just and proper, including costs and attorneys' fees incurred in this action.

## Count II
### Hostile Work Environment on the Basis of Religion
(Violation of Title VII and the Maryland Fair Employment Practices Act)

79. Powell incorporates the allegations throughout this Complaint.

80. Defendant violated Title VII and the Maryland Fair Employment Practices Act by subjecting Powell to a hostile work environment by subjecting Plaintiff to a hostile work environment because of her religion.

81. Defendant and its employees subjected Powell to harassment on the basis of her religion, Islam. That harassment was severe and pervasive and created a hostile work environment.

82. When Powell was Christian, Powell did not experience discrimination or harassment. Only when Powell converted to Islam, began wearing the hijab, and submitted religious accommodation requests did she experience discrimination and harassment.

83. Defendant and its employees did not subject to non-Muslim employees to harassment on the basis of their religion.

84. The conduct of Defendant and its employees was subjectively and objectively offensive.

85. Defendant was aware of such conduct because Powell complained to Defendant about the hostile work environment.

86. Defendant did not reasonably try to prevent or promptly correct the harassing behavior.

87. But for harassment amounting to a hostile work environment, Powell could have continued to work and perform the duties of her job.

88. As a result of the failure to accommodate and hostile work environment, Powell was forced to resign.

89. The willful, intentional, and unlawful actions violate the laws and regulations of the State of Maryland, including, without limitation, the Maryland Fair Employment

Practices Act, and the laws and regulations of the United States, including, without limitation, 42 U.S.C. §§ 12101, *et seq.*

90. Powell requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deems just and proper, including costs and attorneys' fees incurred in this action.

### Count III
### Hostile Work Environment on the Basis of Sex
(Violation of Title VII and Maryland Fair Employment Practices Act)

91. Powell incorporates the allegations throughout this Complaint.

92. Defendant violated Title VII and the Maryland Fair Employment Practices Act by (1) subjecting Powell to a hostile work environment because of her sex and (2) denying Powell reasonable religious accommodations because of her sex.

93. Defendant's employees frequently subjected Powell to sexual harassment because she was a woman.

94. Defendant and its employees subjected Powell to severe and pervasive sexual harassment such that it created a hostile work environment.

95. The conduct of Defendant and its employees was subjectively and objectively offensive.

96. Male employees were not subjected to sexual harassment on the basis of their male sex, nor did they have to endure sexual harassment amounting to a hostile work environment as a condition of their employment.

97. Powell complained to Defendant about sexual harassment and the hostile work environment.

98. Defendant did not reasonably try to prevent or promptly correct the harassing behavior.

99. But for the hostile work environment, Powell could have continued to work and perform the duties of her job.

100. Similarly, Defendant denied Powell religious accommodations because she was a woman. Defendant would grant equivalent accommodations to men.

101. Defendant granted male employees bathroom breaks, smoke breaks, and other breaks consistent with the length of time Powell needed for prayer breaks.

102. Because of the hostile work environment, Powell was forced to resign.

103. The willful, intentional, and unlawful actions violate the laws and regulations of the State of Maryland, including, without limitation, the Maryland Fair Employment Practices Act, and the laws and regulations of the United States, including, without limitation, 42 U.S.C. §§ 12101, *et seq.*

104. Powell requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deems just and proper, including costs and attorneys' fees incurred in this action.

### Count IV
### Constructive Discharge
(Violation of Title VII and the Maryland Fair Employment Practices Act)

105. Powell incorporates the allegations throughout this complaint.

106. Defendant violated Title VII and the Maryland Fair Employment Practices Act by constructively discharging Powell after it subjected her to a hostile work environment and compelled Powell to work without the reasonable accommodation her faith required and that Title VII and the Maryland Fair Employment Practices Act mandated Defendant provide.

107. Defendant subjected Powell to a hostile work environment by (1) refusing Powell reasonable religious accommodation to take short prayer breaks, and (2) harassing Powell because of her religion and sex.

108. Powell's working conditions became so intolerable that Powell was unable to continue employment with Defendant.

109. Powell requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deem just and proper, including costs and attorneys' fees incurred in this action.

## Prayer for Relief

110. WHEREFORE, Powell requests that this Honorable Court enter judgement in favor of Powell and against Defendant, on each and every county in this Complaint, and enter an Order awarding the following relief:

   A. An injunction prohibiting Defendant from discriminating against employees on the bases of religion, sex, or race thereof;

   B. An injunction ordering Defendant to institute a religious accommodation allowing Muslim workers to wear religious head coverings;

   C. An injunction ordering Defendant to institute a religious accommodation allowing Muslim workers to take prayer breaks;

   D. Payment for all economic damages, including but not limited to, back pay, front pay, and lost benefits;

   E. Payment for non-economic damages, including emotional harm;

   F. Punitive damages;

   G. Statutory damages;

H. An award of attorneys' fees, costs and expenses of all litigation; and,

I. Any further relief to which Powell is entitled or that this Honorable Court deems just and proper.

## JURY DEMAND

Powell demands a trial by jury.

Respectfully submitted,

**CAIR NATIONAL LEGAL DEFENSE FUND**

BY: /s/ Lena Masri
Lena F. Masri (VA 93291)
lmasri@cair.com
Gadeir I. Abbas (VA 81161) α
gabbas@cair.com
Justin Sadowsky (D.C. 977642)
jsadosky@cair.com

453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 379-3317

α *Licensed in VA, not D.C.*
*Practice limited to federal matters.*

Dated:  August 13, 2020