### UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND
### BALTIMORE DIVISION

| | |
|---|---|
| **DIAMOND POWELL** | |
| Plaintiff, | **Case No.: 1:20-cv-02343-CCB** |
| **v.** | **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| **SUSDEWITT MANAGEMENT, LLC d/b/a MCDONALD'S,** | |
| Defendant. | |

### <u>Complaint</u>

Plaintiff **DIAMOND POWELL,** by and through her attorneys, CAIR National Legal Defense Fund, brings this action against **SUSDEWITT MANAGEMENT, LLC d/b/a MCDONALD'S** ("McDonald's"), for compensatory and punitive damages, declaratory and injunctive relief, pre-judgement and post-judgement interest, costs and attorneys' fees for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII") and violations of the Maryland Fair Employment Practices Act (FEPA) §20-602, Annotated Code of Maryland committed when Defendant refused to provide reasonable religious accommodations to take short prayer breaks during work despite lack of hardship or cause, subjected her to harassment on the basis of sex and religion, amounting to a hostile work environment, and forced her to resign.

1

**Jurisdiction and Venue**

1.      Plaintiff's claim for discrimination on the basis of religion and sex in violation of Title VII is brought under 42 U.S.C. §2000e-5 and the Maryland Fair Employment Practices Act (FEPA) §20-602, Annotated Code of Maryland.

2.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and supplemental jurisdiction over the state law claims under 28 U.S. Code § 1367.

3.      This Court has personal jurisdiction over Defendant because Defendant resides and conducts business in this judicial district.

4.      Plaintiff's claims for attorneys' fees and costs are predicated upon Title VII, 42 U.S.C. §2000e-2(m), §20-602, Annotated Code of Maryland, and Fed. R. Civ. P. 54.

5.      Venue is proper under 28 U.S.C. § 1391 as to Defendant because Defendant operates within the geographical boundaries of this Judicial District, and a substantial part of the events or omissions giving rise to the claims occurred within the District.

**Parties**

6.      Plaintiff Diamond Powell is a Muslim woman and was at all relevant times an employee of Defendant McDonald's.

7.      Defendant McDonald's is a for-profit corporation incorporated under the laws of Maryland (Business Entity No. W06545164). Defendant McDonald's headquarters and principal office is located at 4200 Forbes Blvd., Lanham, MD 20706. Defendant McDonald's regularly and systematically conducts business in the State of Maryland, within this district. Defendant McDonald's was at all relevant times an "employer" as the term is defined in Title VII.

## Administrative History

8.      Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") on October 24, 2018 and the Maryland Commission on Civil Rights (the "MCCR").

9.      Plaintiff received a Notice of Right to Sue on May 18, 2020.

10.     This Complaint amends Plaintiff's initial Complaint which was filed within 90 days from the date Plaintiff received the Notice of Right to Sue from the EEOC.

11.     Plaintiff has exhausted her administrative remedies.

## Factual Background

12.     Powell is a Muslim woman who wears a hijab, a religious head covering, in accordance with her sincerely-held religious beliefs. Powell has a sincerely-held religious belief that she must pray five times a day during prescribed prayer times. These prayers occur (1) after dawn – *fajr,* (2) early afternoon– *dhuhr,* (3) late afternoon – *asr,* (4) after sunset – *maghrib,* and (5) late evening – *isha.* Prayers take approximately five to ten minutes to complete.

13.     Powell is currently pursuing her master's degree in branding and copywriting. She graduated from Morgan State University with a degree in public relations and advertising.

14.     Powell first learned about an open position with Defendant McDonald's when she attended a job fair at the National Black Caucus Convention. There, Powell met the Director of Operations Tim Larimer and Owner Isaac Green. They offered her a Manager in Training position. At that time Defendant hired her, Powell was Christian.

15.     Defendant McDonald's employed Powell from August 2016 until approximately April 2017 without incident.

16.     Powell was an exemplary employee. As one of the few university-educated

employees at McDonald's, Powell was on a fast track to becoming a general manager of McDonald's location. As soon as McDonald's decided to hire Powell, they informed her they wanted to train her to become a general manager. Thus, McDonald's invested in Powell's management trainings.

17.     McDonald's quickly promoted Powell because of her exemplary work ethic. McDonald's initially hired Powell as a crew trainer. After approximately three months, McDonald's promoted Powell to shift manager. Approximately 7-12 months later, McDonald's promoted Powell to department manager. At the time that Powell was a department manager, McDonald's was training her to become a general manager.

18.     Each promotion required Powell to take online certification exams. Powell passed each exam with high scores, often ranging between 90% and 100%.

19.     Powell's promotions also required she pass in-store exams where she would prove her skills as a manager. She passed each in-store exam.

20.     In fact, Powell's work ethic and professionalism were so impeccable that employees expressed to her their belief that Powell worked with the corporate office. For example, a McDonald's manager and crew member at the concourse D location told Powell that corporate must have sent her to monitor the work ethic of other employees.

21.     In additional to her strong work ethic, Powell always sought to promote a positive environment for her co-workers and subordinates.

22.     She often used personal funds on rewards for employees. For example, Powell created an employee birthday board and purchased Target gift cards and candy from her own personal funds to gift employees on their birthdays.

23.     Powell also created an approved bus pass program wherein she would reward subordinates with stars, redeemable for a monthly bus pass. Approximately seven employees

received monthly bus passes.

24.     Powell often provided transportation for fellow employees.

25.     Prior to Powell's forced resignation, she was in the process of creating an employee of the month program to boost morale at her location.

26.     Further, while working at Concourse A/B, the Concourse D General Manager often asked Powell to come work for her at the Concourse D location because she believed she and Powell would work well together.

27.     Powell's professionalism and stellar attitude became known at BWI Airport, leading several other companies to offer Powell employment. For example, Southwest Airlines and Alaska Airlines offered Powell positions as a flight attendant after interacting with her at McDonald's and witnessing her professional and positive attitude. Several other stores in the concourse offered Powell positions. A manager offered Powell a position at her store because of her kindness and professional attitude.

28.     Prior to converting to Islam and her conversion becoming known to employees when she began wearing *hijab* to work in May 2017, Powell enjoyed her employment.

29.     Powell converted to Islam in February 2017.

30.     Powell began wearing the hijab around May 2017, in accordance with her new sincerely-held religious beliefs. She also wore an *abaya*, a modest dress worn by Muslim women.

31.     Prior to becoming visibly Muslim and requesting a religious accommodation to pray and wear hijab from Defendant in May 2017, Powell had never encountered any issues with her coworkers or management.

32.     However, shortly after beginning to wear the hijab at work and submitting a religious accommodation to take short prayer breaks and wear hijab, Powell was subjected to a barrage of harassment from management and coworkers.

33.     Defendant maintains two locations at Baltimore Washington International Airport (BWI) at Concourse A/B and Concourse D. Powell began her employment at the Concourse A/B location.

34.     As soon as Powell began working at the Concourse A/B location, employees warned her that the general manager was tough, and that Diamond would have to be tough to endure her employment.

35.     In May 2017, Powell submitted religious accommodation requests to wear her hijab and take short prayer breaks verbally to the general manager.

36.     The general manager granted her request to wear hijab.

37.     However, as soon as she began wearing hijab, co-workers learned Powell was Muslim and began harassing her because of her sex and religion. The harassment was constant and pervasive, directed at Powell by managers, coworkers, and ownership. Non-exhaustive and illustrative examples of this harassment are described specifically below.

38.     For example, a shift manager harassed Powell, "Oh you're Muslim? I never had Muslim pu**y before," "I bet that works really tight" and "I'd tear that up." The shift manager had a reputation for harassing female employees, but his harassment of Powell became significantly worse when he learned about her religion. Powell demanded he stop harassing her. Powell even reported the harassment to her supervisor.

39.     Another manager asked Powell if she had a husband at least one or two times a week. Despite Powell providing the same answer each time, the manager continued to repeat the same question causing Powell frustration and humiliation. The manager asked this question of Powell as a way of propositioning her.

40.     Several members of management and coworkers asked Powell if she was a virgin.

41.     On one occasion, the general manager showed employees the emergency exit route and stated that if there was a terrorist attack, female Muslims would have to take their hijab off.

42.     A crew member harassed Powell, who was a crew trainer at the time, stating "Where's your night gown?" This was in reference to Powell's *abaya*. Powell attempted to address the harassment by speaking with the crew member about her behavior. The harassment continued.

43.     One employee told Powell that she looked like *Grimace,* a purple monster-like McDonaldland character, because of her hijab. Powell reported the comment to her supervisor, who did nothing.

44.     Management was aware that Powell was being subjected to ongoing harassment – which was happening publicly. However, management refused to address the hostile environment Powell was being subjected to.

45.     Moreover, Powell repeatedly reported the harassment to supervisors, including the general manager. Again, management did nothing to stop the harassment.

46.     Because management did not take action to remedy harassment any time Powell reported it, and because management often participated in harassment of Powell, McDonald's created an environment wherein employees disregarded Powell's requests to cease harassment.

47.     Powell reported harassment on, but not limited to, August 2017, September 21, 2017, September 22, 2017, and April 22, 2018.

48.     The general manager initially granted Powell's request to take short prayer breaks on condition that she inform other employees before leaving to pray.

49.     Powell began taking short prayer breaks and notified other employees as she was instructed to do.

Case 1:20-cv-02343-CCB   Document 18   Filed 12/02/20   Page 8 of 21


50.     Powell took prayer breaks as quickly as possible and without causing a burden to her employer. Her prayer breaks lasted no longer than a typical bathroom break. The prayer breaks she took were indistinguishable from breaks other employees took to go use the restroom, to make a call, to smoke a cigarette, among other things.

51.     Powell prayed in a quiet area right next to McDonald's Concourse A/B location.

52.     Upon learning where she was performing her prayers, the general manager prohibited Powell from continuing to pray at that location and instructed her instead to pray in the "stock room" area, between moving rows of shelves.

53.     In order to access a shelf in the stock room, one must slide another out of the way. Employees attempting to access the shelves while Powell was praying would risk closing the shelves on Powell causing a significant safety concern.

54.     Further, this area was dirty, with wet floors, had garbage accumulating from the drainage, and was susceptible to flooding.

55.     Powell has a sincerely-held religious belief that prayers must be conducted in a clean area, otherwise the prayer is negated. Further, there must be adequate space to perform the prostration – which there was not in the stock room.

56.     Because Powell could not perform her prayers in the stock room area due to safety, health and religious reasons, she continued to pray in the quiet area right next to Defendant's Concourse A/B location.

57.     This continued without incident until September 21, 2017, when the general manager altogether revoked her request to take a prayer break claiming, "God will understand."

58.     By doing so, the general manager forced Powell to choose between continuing her employment with McDonald's or sacrificing her sincerely-held religious beliefs.

59.     After her prayer accommodation was revoked, one day Powell waited until the

rush died down and took a 10-minute break – which is akin to a short smoke break or bathroom break that other employees regularly take without issue. In response, the general manager reprimanded Powell and forced her to clock out of her shift and go home.

60.     That same day, a manager told her to "take that hoodie off your head" and another shift manager told her "you don't have to wait for God to wake up for you to pray."

61.     Powell contacted a supervisor and informed him that the manager had sent her home.

62.     Later that evening, Powell filed a complaint with HR Assistant Rosanna Christopher.

63.     On September 22, 2017, Powell disclosed concerns to the general manager and the franchise owner regarding the lack of safety, inadequate space, and unsanitary conditions provided in the "stock room" that do not comply with her sincerely-held religious beliefs. Powell also notified the franchise owner during this meeting about the consistent sexual harassment towards her.

64.     The owner forbade Powell from praying inside any of the stores because he did not want people to think the store was a sanctuary and because he did not want to offend non-religious employees. Referencing the inability to take prayer breaks, the owner told Powell, "God understands."

65.     The owner assigned the general manager to coordinate a prayer schedule with Powell, which the general manager refused to do.

66.     Instead, the general manager harassed Powell because of her religious beliefs.

67.     The general manager made derogatory comments towards Powell such as: "you know how Baltimore girls are, they'll be in a relationship with a Muslim guy and they'll be Muslim but when they aren't with the guy anymore, they aren't gonna be Muslim anymore."

68.     On or around October 2, 2017, Powell left the store for a 10-minute prayer break.

9

When she returned, the general manager called and demanded to know where she went. Powell informed her she had taken a brief prayer break. The general manager informed Powell that she would be filing a complaint with the owner. The general manager further demanded Powell leave and not return to the store until she speaks with upper management.

69.     Powell filed complaints regarding denial of religious accommodations at Concourse A/B on, but not limited to, September 21, 2017, September 22, 2017, and October 3, 2017.

70.     McDonald's management failed to take action to resolve any of the complaints Ms. Powell filed.

71.     McDonald's made clear that they wanted to avoid providing religious accommodations to Powell.

72.     Powell has a sincerely-held religious belief that she must wear loose-fitting and modest clothing.

73.     On one occasion, Powell was training at McDonald's Dodge Plaza location in Lanham, MD. Powell inquired with an employee about an accommodation to wear a skirt, or more loose-fitting clothing after Powell learned another employee had an accommodation to wear a skirt.

74.     The employee went into a room to ask a supervisor about an accommodation for Powell. When the employee returned, she said she was instructed to tell Powell not to pursue the matter, and not to bring up the possibility of an accommodation in front of Powell.

75.     On October 5, 2017, management moved Powell to the Concourse D location, which was smaller than the previous Concourse A/B location, because the owner wanted Powell to learn Islam from the Concourse D manager.

76.     The Concourse D manager made some attempts to accommodate Powell's

request to take short breaks by scheduling her shifts such that only one prayer fell during a given shift. But the Concourse D manager was not always able to do so.

77.    When Powell was able to pray, she prayed in an open space by Defendant's concourse D location.

78.    This shift-the-schedule accommodation worked when the Concourse D manager implemented it, but Defendant's director revoked even this accommodation. Sometime between October and November 2017, Powell met with the director and explained the arrangement that she and the Concourse D manager had agreed upon.

79.    The director revoked the accommodation, claiming without explaining that the accommodation would not work for McDonald's.

80.    The director permitted Powell to pray on the condition that she continue to monitor the store while she was praying and that she stop praying if there was an incident that occurred – a condition that makes it impossible for Powell to perform her prayers in accordance with her sincerely-held religious beliefs

81.    On January 12, 2018, a supervisor reprimanded Powell for taking a brief prayer break because he stated there was no other manager on shift to cover for Powell during her brief prayer break. A supervisor then requested a meeting with Powell. During the meeting, the supervisor reprimanded Powell and threatened to terminate her employment if she left the store to pray without ensuring coverage by another manager during her breaks.

82.    Defendant accommodated restroom breaks, smoke breaks, and brief lunch breaks of other employees without issue and did not condition those breaks on other employees' agreement to end their breaks in the manner Defendant conditioned the equivalent-in-time breaks Powell sought to perform her prayers.

83.    On January 17, 2018, a crew member took a 30-minute break without notifying other employees of her break. Powell called the Concourse D manager to file a complaint about the

employee's insubordination. The Concourse D manager responded by telling Powell that she did not understand why Powell was filing a complaint when Powell also takes breaks.

84.    The Concourse D manager also informed Powell that the formerly granted religious accommodations were not going to be honored moving forward.

85.    The Concourse D manager told Powell that she would be modifying Powell's schedule in accordance with McDonald's needs and would no longer accommodate Powell's prayers. She stated, "I'm Muslim too and I pray when I go home."

86.    On January 23, 2018, counsel for Powell contacted Defendant requesting that Powell's brief prayer breaks be accommodated. However, Defendant refused.

87.    On February 9, 2018, Powell attempted to take a prayer break with two other managers on duty. A crew member harassed Powell, demanding to know why Powell gets to take a prayer break. The crew member threatened to report Powell to the owner. Several employees witnessed the incident.

88.    In February 2018, the Concourse D manager refused to accommodate Powell's prayer breaks. The Concourse D manager harassed her, alleging Powell was a fake Muslim. The Concourse D manager demanded to know how Powell could call herself a Muslim, alleged that Powell did not even know Arabic, and further alleged that Powell could not read the Qur'an. The Concourse D manager demanded Powell leave the premises.

89.    A female crew member or crew trainer witnessed the incident.

90.    Powell called the manager's supervisor and complained about the manager's refusal to accommodate her prayer breaks. Powell also complained about the harassment described above. The supervisor asked Powell not to quit her employment and Powell reluctantly agreed to remain despite severe and pervasive harassment.

91.    On April 16, 2018, employees began picking on Powell, mocking her cooking speed.

92.     Employees harassed Powell for a myriad of reasons, singling her out among other employees. Employees repeatedly expressed their belief that it was unimportant for Powell to take prayer breaks and often complained, demanding Powell conduct her prayers after the prayer time had passed.

93.      One crew member, with whom Powell had a generally friendly relationship, in particular was picking on Powell. In response, Powell playfully tossed a piece of a chicken strip at a male crew member.

94.     In Defendant's workplace, employees often thew food at one another and did so in jest and without malice, and management never investigated, reprimanded, or suspended employees for such conduct. The interaction was consistent and in line with Defendants' workplace culture.

95.     When it came to management's attention that Powell had thrown food—doing what other employees regularly did—Management immediately investigated the incident and questioned Powell. Management did not typically investigate such interactions at Defendant's places of operation because such interactions were commonplace—initiated by entry level employees as well as supervisors.

96.     Management seldom reprimanded employees for egregious conduct. On one occasion, Powell reported an employee for stealing money from the register. McDonald's did not suspend or terminate the employee. Employees often gave friends and acquaintances free food without reprimand.

97.     On April 20, 2018, human resources called Powell and asked her not to come into her shift. HR also requested Powell report the next day for a mandatory meeting.

98.     Powell requested to know what the  meeting was about. They did not provide Powell with a reason..

99.     On April 22, 2018, Powell was forced to resign and constructively discharged because she could no longer endure harassment, disparate treatment,and the denial of her prayer accommodations.

100.     Powell had filed multiple complaints throughout her employment.

101.     Powell notified management regarding the denial of religious accommodations at the Concourse D location verbally throughout her time there, and on, but not limited to, January 23, 2018, February 2018, and on April 22, 2018. Defendant never provided reasonable religious accommodations.

102.     By refusing to accommodate Powell's sincerely-held religious beliefs that require her to pray during prescribed time frames, McDonald's unlawfully forced Powell to choose between continuing her employment or sacrificing her faith.

103.     Defendant treated Powell's breaks taken for religious purposes differently than non-religious breaks taken by employees who were not Muslim. Other managers often took smoke breaks, restroom breaks, lunch breaks, and other breaks without obtaining permission, and without reprimand.

104.     A shift manager at the Concourse A/B location took approximately two or three, 15-30-minute breaks per shift to smoke, use the restroom, or purchase lunch. On some occasions the shift manager left for an hour.

105.     The shift manager took smoke breaks by exiting the security area and smoking in a parking lot or parking structure.

106.     As a result, Powell was forced to work overtime until the shift manager returned. Powell complained to the shift manager about his behavior on several occasions. McDonald's did not discipline the shift manager for his excessive breaks.

107.     A manager at the Concourse D location similarly took smoke breaks, restroom

14

breaks, lunch breaks, and other breaks without reprimand. The manager took at least one break per shift, of 30-minutes to one hour. The manager sometimes took breaks outside the Concourse D area near the airplane tarmac.

108.    Several employees, including the supervisor, complained to the store manager about her excessive breaks. McDonald's did not discipline the manager for her excessive breaks.

109.    A department manager at the Concourse A/B location took at least one break per shift. The department manager took smoke breaks, lunch breaks, restroom breaks, and breaks to see his significant other who worked in a restaurant down the hall. The department manager's breaks lasted anywhere between 30 minutes to an hour.

110.    As a result of harassment and denial of prayer breaks, Powell was forced to resign.

## Claims for Relief

### Count I
### Failure to Accommodate on the Basis of Religion
(Violation of Title VII and Maryland Fair Employment Practices Act)

111.    Powell incorporates the allegations throughout the Complaint.

112.    Defendant violated Title VII and the Maryland Fair Employment Practices Act by (1) refusing Powell reasonable religious accommodation to take short prayer breaks during her shifts and (2) subjecting Powell to harassment on the basis of her religion.

113.    Powell has a sincerely-held religious belief that she must pray five times a day at prescribed prayer times. These prayers occur (1) after dawn – *fajr,* (2) early afternoon – *dhuhr,* (3) late afternoon – *asr,* (4) after sunset – *maghrib,* and (5) late evening – *isha.* Prayers take approximately five to ten minutes to complete.

114.    Defendant was aware that Powell's prayer breaks required an  accommodation.

Powell had requested such accommodations repeatedly, explained at various times why she could not pray in the dirty and dangerous stock room, and let it be known to Defendant's supervisors that the short breaks she sought from Defendant were for the purpose of performing her prayers.

115.    Powell's request does not constitute undue hardship upon Defendant or otherwise affect Defendant's business operations. Other employees took equivalent-in-time breaks for nonreligious reasons that Defendant allowed, and fast food restaurants across the country grant Muslim workers the short prayer breaks that Defendant did not allow Powell to take.

116.    Powell could have continued to work and perform the duties of her job had her request for an accommodation been honored. Defendant did not engage in any interactive or good faith process regarding Powell's sincerely-held religious beliefs. Instead Defendant refused to provide reasonable religious accommodations.

117.    Defendant allowed other employees short bathroom and smoke breaks, but denied Powell's short prayer breaks.  In doing so, Defendant treated breaks taken for religious purposes differently than breaks taken for nonreligious purposes.

118.    As a result of the failure to accommodate and hostile work environment, Powell was forced to resign.

119.    The willful, intentional, and unlawful actions violate the laws and regulations of the State of Maryland, including, without limitation, the Maryland Fair Employment Practices Act, and the laws and regulations of the United States, including, without limitation, 42 U.S.C. § § 12101, *et seq.*

120.    Powell requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deems just and proper, including costs and attorneys' fees incurred in this action.

**Count II**
**Hostile Work Environment on the Basis of Religion**
(Violation of Title VII and the Maryland Fair Employment Practices Act)

121.    Powell incorporates the allegations throughout this Complaint.

122.    Defendant violated Title VII and the Maryland Fair Employment Practices Act by subjecting Powell to a hostile work environment by) subjecting Plaintiff to a hostile work environment because of her religion and sex.

123.    Defendant and its employees subjected Powell to harassment on the basis of her religion, Islam. That harassment was severe and pervasive and created a hostile work environment.

124.    When Powell was Christian, Powell did not experience discrimination or harassment. Only when Powell converted to Islam, began wearing the hijab, and submitted religious accommodation requests did she experience discrimination and harassment.

125.    Defendant and its employees did not subject non-Muslim employees to harassment on the basis of their religion.

126.    The conduct of Defendant and its employees was subjectively and objectively offensive.

127.    Defendant was aware of such conduct because Powell complained to Defendant about the hostile work environment.

128.    Defendant did not reasonably try to prevent or promptly correct the harassing behavior.

129.    But for harassment amounting to a hostile work environment, Powell could have continued to work and perform the duties of her job.

130.    As a result of the failure to accommodate and hostile work environment, Powell was forced to resign.

17

The willful, intentional, and unlawful actions violate the laws and regulations of the State of Maryland, including, without limitation, the Maryland Fair Employment Practices Act, and the laws and regulations of the United States, including, without limitation, 42 U.S.C. § § 12101, *et seq*.

131.    Powell requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deems just and proper, including costs and attorneys' fees incurred in this action.

**Count III**
**Hostile Work Environment on the Basis of Sex**
(Violation of Title VII and Maryland Fair Employment Practices Act)

132.     Powell incorporates the allegations throughout this Complaint.

133.    Defendant violated Title VII and the Maryland Fair Employment Practices Act by (1) subjecting Powell to a hostile work environment because of her sex and (2) denying Powell reasonable religious accommodations because of her sex.

134.    Defendant's employees frequently subjected Powell to sexual harassment because she was a woman.

135.    Defendant and its employees subjected Powell to severe and pervasive sexual harassment such that it created a hostile work environment.

136.    The conduct of Defendant and its employees was subjectively and objectively offensive.

137.    Male employees were not subjected to sexual harassment on the basis of their male sex, nor did they have to endure sexual harassment amounting to a hostile work environment as a condition of their employment.

138.    Powell complained to Defendant about sexual harassment and the hostile work environment.

139.    Defendant did not reasonably try to prevent or promptly correct the harassing behavior.

140.    But for the hostile work environment, Powell could have continued to work and perform the duties of her job.

141.    Similarly, Defendant denied Powell religious accommodations because she was a woman. Defendant would grant equivalent accommodations to men.

142.    Defendant granted male employees bathroom breaks, smoke breaks, and other breaks consistent with the length of time Powell needed for prayer breaks.

143.     Because of the hostile work environment, Powell was forced to resign.

144.    The willful, intentional, and unlawful actions violate the laws and regulations of the State of Maryland, including, without limitation, the Maryland Fair Employment Practices Act, and the laws and regulations of the United States, including, without limitation, 42 U.S.C. § § 12101, *et seq.*

145.    Powell requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deems just and proper, including costs and attorneys' fees incurred in this action.

<u>Count IV</u>
**Constructive Discharge**
(Violation of Title VII and the Maryland Fair Employment Practices Act)

146.     Powell incorporates the allegations throughout this complaint.

147.    Defendant violated Title VII and the Maryland Fair Employment Practices Act by constructively discharging Powell after it subjected her to a hostile work environment and compelled Powell to work without the reasonable accommodation her faith required and that Title VII and the Maryland Fair Employment Practices Act mandated Defendant provide.

148.    Defendant subjected Powell to a hostile work environment by (1) refusing Powell reasonable religious accommodation to take short prayer breaks, and (2) harassing Powell because of her religion and sex.

149.    Powell's working conditions became so intolerable that Powell was unable to continue employment with Defendant.

150.    Powell requests this Honorable Court grant relief in the form described in the Prayer for Relief below, plus all such other relief this Honorable Court deem just and proper, including costs and attorneys' fees incurred in this action.

**Prayer for Relief**

151.    WHEREFORE, Powell requests that this Honorable Court enter judgement in favor of Powell and against Defendant, on each and every county in this Complaint, and enter an Order awarding the following relief:

A.  An injunction prohibiting Defendant from discriminating against employees on the bases of religion, sex, or race thereof;

B.  An injunction ordering Defendant to institute a religious accommodation allowing Muslim workers to wear religious head coverings;

C.  An injunction ordering Defendant to institute a religious accommodation allowing Muslim workers to take prayer breaks;

D.  Payment for all economic damages, including but not limited to, back pay, front pay, and lost benefits;

E.  Payment for non-economic damages, including emotional harm;

F.  Punitive damages;

G.  Statutory damages;

H.  An award of attorneys' fees, costs and expenses of all litigation; and,

I.  Any further relief to which Powell is entitled or that this Honorable Court deems just and proper.

**JURY DEMAND**

Powell demands a trial by jury.

Respectfully submitted,

**CAIR    NATIONAL    LEGAL DEFENSE FUND**

BY: /s/ Lena Masri
Lena F. Masri (VA 93291)
lmasri@cair.com
Gadeir I. Abbas (VA 81161) α
gabbas@cair.com
Justin Sadowsky (D.C. 977642)
jsadosky@cair.com
Zanah Ghalawanji (MI P83116) ß ç
zghalawanji@cair.com

453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 379-3317

α *Licensed in VA, not D.C.*
*Practice limited to federal matters.*

ß *Licensed in MI, not D.C.*
*Practice limited to federal matters.*

ç *Admitted Pro Hac Vice.*

Dated: December 2, 2020