### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DIAMOND POWELL | * | |
| | * | Civil Action No. CCB-20-2343 |
| v. | * | |
| | * | |
| SUSDEWITT MGMT., LLC, | * | |
| *doing business as* MCDONALD'S | * | |
| | * | |
| | ****** | |

## MEMORANDUM

This civil rights action involves a dispute between Diamond Powell and her employer, Susdewitt Management, LLC, which does business as McDonald's ("Susdewitt"). Powell raises claims based on a failure to accommodate her religion, for hostile work environment, and for constructive discharge. Now pending before the court is Susdewitt's motion to dismiss. (ECF 22). The matter has been fully briefed and no oral argument is necessary. *See* Local Rule 105(6) (D. Md. 2021). For the reasons discussed herein, the motion will be denied.

## FACTS AND PROCEDURAL HISTORY

Diamond Powell was hired by the defendant Susdewitt in August 2016 for a Manager in Training position at a McDonald's restaurant in the Baltimore Washington International Airport. (ECF 18, Am. Compl. at ¶¶ 14–15). Powell eventually passed several certification exams. (*Id.* at ¶¶ 17–19). She was promoted to shift manager after three months on the job, and then to department manager less than a year later. (*Id.* at ¶ 17).

Powell converted to Islam in February 2017. (*Id.* at ¶ 29). In May 2017, Powell submitted a request to her manager to wear her hijab and to take short prayer breaks in accordance with her religious beliefs that she "must pray five times a day during prescribed prayer times." (*Id.* at ¶¶ 12, 35). The general manager granted her request to wear a hijab, but when she began to do so she

alleges she was subjected to "a barrage of harassment from management and coworkers" on the basis of her sex and her religion. (*Id.* at ¶¶ 30, 32, 36–37).

Powell details a litany of offensive and degrading remarks made by her colleagues. For example, one shift manager propositioned her by stating that he had never "had Muslim pussy before" and that he would "tear that up;" another frequently inquired whether she had a husband; others asked if she was a virgin. (*Id.* at ¶¶ 38–40). She reported these incidents to management, but management refused to address the problem. (*Id.* at ¶¶ 44, 47).

Still, Powell took her prayer breaks, which lasted no longer than other employees' bathroom breaks and cigarette breaks, and prayed in a quiet area in the airport concourse near the restaurant. (*Id.* at ¶¶ 50, 103–107). Her supervisor instructed her to instead pray in the store's stock room, a dirty and wet area between moving rows of shelves. (*Id.* at ¶¶ 52–54). Because her religious beliefs required her to pray in a clean area and because there was insufficient space to prostrate herself there, Powell continued to pray outside the restaurant rather than in the stock room. (*Id.* at ¶¶ 55–56).

On September 21, 2017, though, Powell was told she could not take a prayer break at all. (*Id.* at ¶ 57). When she defied this instruction, she was reprimanded and forced to clock out early. (*Id.* at ¶ 59). She filed a complaint with human resources. (*Id.* at ¶ 62). During a September 22, 2017, meeting, she told the franchise owner about the lack of safety, inadequate space, and unsanitary conditions in the stock room, as well about the sexual harassment she had experienced. (*Id.* at ¶ 63). In response, the owner forbade Powell from praying inside because he "did not want people to think the store was a sanctuary and because he did not want to offend non-religious employees." (*Id.* at ¶ 64). Instead, the owner assigned the general manager the responsibility to create a prayer schedule with Powell, but the general manager refused to do this. (*Id.* at ¶ 65).

Eventually, Powell was transferred from one McDonald's location at the airport to another, where the manager initially made some attempts to accommodate Powell's requests for prayer breaks. (*Id.* at ¶¶ 75–77). This accommodation was eventually revoked by the director, and Powell was permitted to pray "on the condition that she monitor the store while she was praying and that she stop praying if there was an incident that occurred," a condition she believed made it impossible to perform her prayers consistently with her religious beliefs. (*Id.* at ¶¶ 79–80). Ultimately, she was threatened with termination if she left the restaurant without ensuring coverage by another manager during her breaks. (*Id.* at ¶ 81). On April 22, 2018, Powell alleges she was "forced to resign" because she "could no longer endure harassment, disparate treatment, and the denial of her prayer accommodations." (*Id.* at ¶ 99).

Based on the foregoing allegations Powell filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 24, 2018. (*See id.* at ¶ 8; *see also* ECF 26-2, Ex. 1 at 3). Her charge stated that she experienced discrimination based on sex and religion and that she experienced retaliation; and she attached a statement explaining that, in September 2017 and January 2018, she had religious accommodations revoked, that she was regularly subjected to harassment, sexual and otherwise, because of her religious beliefs, and that she reported this harassment and the hostile work environment it created to human resources on numerous occasions to no avail. (*See* ECF 26-2 at 4–5). Powell received a notice of right to sue on May 18, 2020. (*See* ECF 18 at ¶ 9). Powell brought this action on August 13, 2020, seeking damages and equitable relief and alleging four violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Maryland Fair Employment Practices Act ("MFEPA"): (1) failure to accommodate on the basis of religion; (2) hostile work environment on the basis of religion; (3) hostile work environment on the basis of sex; and (4) constructive discharge. (ECF 1). On December 2, 2020, Powell amended

her complaint to add factual details. (ECF 18). Susdewitt filed a motion to dismiss (ECF 22), which is now fully briefed and ripe for disposition.

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'"[1] *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

Title VII makes it illegal for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

---

[1] The Fourth Circuit Court of Appeals has clarified that plaintiffs are not required to plead facts sufficient to establish a prima facie case to survive a motion to dismiss. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020). This is because a prima facie case is an evidentiary standard rather than a pleading standard. Therefore, plaintiffs are required only to allege facts to plausibly satisfy the elements of a cause of action created by the relevant statute. *Id.*

privileges of employment, because of such individual's . . . religion [or] sex[.]" 42 U.S.C. § 2000e-2(a)(1). MFEPA is the state law analogue of Title VII and "its interpretation is guided by federal cases interpreting Title VII" such that this court's analysis of Powell's Title VII claims "shall constitute its analysis of her [M]FEPA claims." *See Williams v. Silver Spring Fire Dep't*, 86 F. Supp. 3d 398, 408 n.1 (D. Md. 2015). In its opening brief, Susdewitt argues that Powell has failed to state a claim entitling her to relief under Title VII and MFEPA. In its reply brief, Susdewitt for the first time raises an argument based on the timeliness and scope of Powell's EEOC charge. The court has discretion whether to consider an argument raised for the first time in a reply brief, especially where the opposing party may be prejudiced in its ability to respond to the argument. *See Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 620 n.16 (D. Md. 2011). In this case, the court will first address these threshold arguments concerning administrative exhaustion, which for the reasons explained below are not dispositive, and then will evaluate each of Powell's claims in turn.

## I.     Administrative Exhaustion

Title VII requires that a plaintiff file an administrative charge with the EEOC "within one hundred and eighty days after the alleged misconduct." 42 U.S.C. § 2000e-5(e)(1). This period is extended to three hundred days in a state, like Maryland, which "proscribes the alleged employment" and where the "charge has initially been filed with a state . . . agency." *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). Title VII's filing requirement "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

Additionally, "[i]f 'the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (quoting *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)). "[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge" so that "the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex" or "if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Id.* "At the same time, however, if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Id.*

The key to determining whether a discrimination complaint is timely is to determine whether it is based upon discrete acts of discrimination or upon a hostile work environment theory. *See Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 113–15 (2002) (discrete acts not actionable if time barred, even when related to acts alleged in timely filed charges, but hostile work environment claims involving repeated conduct are actionable as they cannot be said to occur on any particular day). A discrete act is one that is not necessarily part of a continuous hostile environment, such as "termination, failure to promote, denial of transfer, or refusal to hire[.]" *Id.* at 114. A party may not attempt to make an earlier discrete act timely by "bootstrapping" it to a timely charge, even if both incidents are related. *See id.* at 112. Under the continuing violation doctrine, however, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purpose of

assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105. Significantly, "unlike a discrete act of Title VII discrimination, the 'anchoring' act [in a hostile work environment claim] need not rise to the level of a Title VII violation itself as long as it contributes to the hostile work environment." *Edwards v. Murphy-Brown, L.L.C.*, 760 F.Supp.2d 607, 620 (E.D. Va 2011) (citing *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007)).

In this case, Powell filed her charge with the EEOC on October 24, 2018, (*see* ECF 18 at ¶ 8; *see also* ECF 26-2, Ex. 2, EEOC Charge at 2), stating that she experienced discrimination based on sex and religion and that she experienced retaliation; and she attached a statement explaining that, in September 2017 and January 2018, she had religious accommodations revoked, that she was regularly subjected to sexual harassment and to harassment because of her religious beliefs, and that she repeatedly reported this harassment and the hostile work environment it created to human resources. (*See* ECF 26-2 at 4–5). Consequently, for the purposes of claims which rely on discrete acts, the court will disregard allegations which clearly fall outside three hundred days of that date—that is, prior to December 28, 2017. *See Edwards*, 760 F. Supp. 2d at 633 At the same time, the court finds that the plaintiff has pled sufficient factual allegations to invoke the continuing violation doctrine with respect to her hostile work environment claims. The court also notes that "evidence developed during discovery may tend to strengthen or undermine that conclusion at a later stage of the proceeding." *Id.* at 625.

## II.     Failure to Accommodate

Title VII prohibits discrimination and discharge on the basis of religion. Under Title VII, the term religion "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . .

religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Accordingly, an employer has a "statutory obligation to make reasonable accommodations for the religious observances of its employees, short of incurring an undue hardship." *EEOC v. Firestone Fibers & Textiles, Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)).

A plaintiff may allege religious discrimination under a theory of disparate treatment or failure to accommodate. Though Powell's claim includes allegations that might support a disparate treatment claim, she has clarified that she intends to proceed on a failure to accommodate theory. (*See* ECF 23, Opp'n at 6 and n.2). To state a religious discrimination claim based on a failure to accommodate theory, a plaintiff must plead that (1) she has a bona fide religious belief that conflicts with an employment requirement; (2) she informed the employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement. *See Firestone Fibers & Textiles*, 515 F.3d at 312. Susdewitt argues that Powell's amended complaint fails to plead facts sufficient to establish the third element of the claim.

Discipline for the purposes of a failure to accommodate claim overlaps with the concept of an adverse employment action; it includes "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities." *See Abdelkader v. Sears, Roebuck & Co.*, 780 F. Supp. 2d 389, 395 (D. Md. 2011) (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (listing these acts as adverse employment actions)); *see also Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 499, 509 (D. Md. 2019) (one percent salary reduction sufficient to satisfy discipline element of a failure to accommodate claim). Additionally, "[i]n some situations, requiring an employee to work under conditions that would violate his religious beliefs, without more, might satisfy" the discipline prong of an accommodation case even if the employer did not,

for example, dock the employee's pay or otherwise punish the employee. *Abdelkader*, 780 F. Supp. 2d at 395 By contrast, an employer does not discipline an employee "if he permits his employee to take leave to avoid working on a religious holiday, even if the employee feels that requiring her to use leave is unfair and coercive." *Id.*

In this case, Powell alleges that she was on a few occasions "forced to clock out of her shift and go home," and she cites in support paragraphs 59, 68, and 88 of her amended complaint.[2] Powell contends that this demonstrates financial loss sufficient to show disciplinary action. For the purposes of this claim, the court must disregard the allegation in paragraph 68, which states Powell was forced to clock out early on October 2, 2017, because this is clearly outside the statute of limitations. But the allegations in paragraphs 59 and 88, construed in the light most favorable to the plaintiff, are not barred. In paragraph 59, Powell alleges that "one day" she was "forced to clock out and go home." Discovery is likely to reveal precisely when this incident occurred and whether the resulting financial impact on Powell was significant or de minimis. And in paragraph 88, Powell alleges that in February 2018 her manager demanded she leave the premises. Again, the court notes that it is possible that discovery will reveal that this claim may fall entirely outside the statute of limitations, but construed in the light most favorable to the plaintiff, the allegations plausibly suggest that Susdewitt disciplined Powell for failing to comply with her conflicting employment requirements by, at a minimum, depriving her of pay on more than one occasion.[3]

---

[2] Powell also argues that having her accommodations revoked is an act of discipline. The court does not reach this argument.

[3] As explained in further detail herein, Powell's hostile work environment claims survive Susdewitt's motion to dismiss. The factual allegations relevant to those claims overlap with the allegations relevant to her failure to accommodate claims. Accordingly, even if discovery reveals that the failure to accommodate claim is entirely time-barred, there will be little to no prejudice to the defendant by allowing the claim to proceed to discovery.

Accordingly, the court will deny the motion to dismiss as to Powell's failure to accommodate claim.

## III.    Hostile Work Environment

Title VII prohibits harassment that creates a hostile work environment for the harassed employee. *See Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020). A hostile environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). Thus, to state a hostile work environment claim, a plaintiff must plead that (1) she was subjected to unwelcome conduct, (2) based on her sex, religion, or other protected status, (3) which was severe or pervasive enough to make her work environment hostile or abusive, and (4) which is imputable to her employer. *Bazemore*, 957 F.3d at 200. Susdewitt argues Powell has failed to plead facts sufficient to establish the third element.

To determine whether conduct is objectively severe or pervasive, a court is to look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)). Incidents that would give rise to "bruised or wounded feelings" are insufficient, as is "rude treatment," "callous behavior," or "a routine difference of opinion and personality conflict[.]" *Id.* at 315–16 (quoting *Sunbelt Rentals*, 521 F.3d at 315–16). Being consistently subjected to "verbal assaults of the most vulgar and humiliating sort," however, is more than sufficient to satisfy the

severe or pervasive element of a hostile work environment claim. *See Anderson v. G.D.C., Inc.*, 281 F.3d 452, 459 (4th Cir. 2002); *see also EEOC v. R&R Ventures*, 244 F.3d 334, 340 (4th Cir. 2001) (allegations that employees commented on a woman's buttocks and breasts and made inappropriate sexual remarks were "more than sufficient" to establish a hostile work environment claim). Indeed, a "work environment consumed by remarks that intimidate, ridicule, and maliciously demean the status of women can create an environment that is as hostile as an environment that contains unwanted sexual advances." *R&R Ventures*, 244 F.3d at 340 (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000)).

In this case, Powell alleges that over the course of nearly a year, between April 2017 and April 2018, she was repeatedly subjected to heinous harassment on the basis of both her sex and her religion.[4] She was propositioned in grossly offensive terms, having been told, "Oh you're Muslim? I never had Muslim pussy before, I bet that works real tight[,]" (ECF 18 at ¶ 38), and having been asked on numerous occasions whether she was a virgin (*id.* at ¶ 40) and whether she had a husband (*id.* at ¶ 39). Additionally, she was also demeaned on account of her religion: she was told her hijab made her "look[] like Grimace, a purple monster-like McDonaldland character," (*id.* at ¶ 43), and the sincerity of her religious beliefs was questioned when she was called a "fake Muslim," (*id.* at ¶ 88). Susdewitt evaluates these remarks in isolation and contends that they are neither severe nor pervasive. The court agrees that not every allegation in Powell's complaint is independently severe, but this court is to consider "all the circumstances," *Perkins*, 936 F.3d at 208. Collectively, when viewed in the light most favorable to Powell, these allegations—which

---

[4] Again, Susdewitt argues that, in support of her hostile work environment claim, Powell may not rely on any allegations from the period prior to December 28, 2017. But as the court explained above, the continuing violation rule permits courts to look to allegations which, if they were discrete acts, would be outside the statute of limitations, but because they are part of a pattern of conduct are actionable for a hostile work environment claim.

Powell plausibly alleges are merely illustrative and not exhaustive of all the instances of harassment she experienced—are sufficient to establish a pattern of conduct creating a workplace environment "that intimidate[s], ridicule[s], and maliciously demean[s] the status of women" in general and Powell in particular. *R&R Ventures*, 244 F.3d at 340; *see also Anderson*, 281 F.3d at 456, 459 (allegations that, among other things, plaintiff was told "black women had the best p***y" were more than sufficient to state a hostile work environment claim) (language sanitized in original)). The treatment she endured was not merely rude or boorish, but includes repeated instances of inappropriate sexual advances and commentary highly demeaning to Powell on account of her sex and religion.

Susdewitt also argues that, as a manager, Powell could have, but failed to, mitigate the hostile work environment created by the alleged harassment. The general rule is that the employer "is liable where it had actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action," *Dennis*, 55 F.3d at 155 (internal quotation marks omitted), which does not clearly preclude assertions that a supervisor was harassed by a subordinate, or what may be called contra-power harassment.[5] Susdewitt relies on *Lyles v. District of Columbia*, in which the court held:

> An employer may be held liable for the harassment of a supervisor by a subordinate if the employer knew or should have known of the harassment and failed to implement prompt and appropriate action; but an employer will not be liable for the sexual harassment of a supervisor by a subordinate where the supervisor-plaintiff had the ability to stop the harassment and failed to do so.

---

[5] Indeed, as another court has stated in a related context, "[w]hen sexual harassment occurs, the identity of the perpetrator is irrelevant to the victimized employee. A hostile environment can be just as oppressive when it is created by co-workers, subordinates, or customers as when it is caused by a superior." *Hanlon v. Chambers*, 195 W. Va. 99, 108 (1995).

17 F. Supp. 3d 59, 70 (D.D.C. 2014). The *Lyles* court was also clear that "[n]o court has ever held that, as a matter of law, an employer cannot be liable for a subordinate's harassment of his or her supervisor." *Id.* at 70 n.7; *see also Cronin v. U.S. Serv. Stations, Inc.*, 809 F. Supp. 922, 931–32 (M.D. Ala. 1992) (fact that plaintiff was harassed by subordinate "does not preclude the court from finding that [the plaintiff] was a victim of sexual harassment."). For the sake of argument, even if the standard in *Lyles* were to apply, Powell contends she informed management of the harassment on multiple occasions, and there are no allegations from which the court can conclude that Powell possessed the ability to, for example, terminate her subordinates. Nor, of course, was Powell able to terminate her supervisors, whom she alleges participated in the harassment. At this stage of the proceedings, based on the allegations in the complaint, the fact that Powell may have been a supervisor to some of her harassers does not preclude her claim.

The motion to dismiss as to Powell's hostile work environment claims will therefore be denied.

## IV.    Constructive Discharge

To state a claim for constructive discharge, a plaintiff must show that her employer "deliberately made [her] working conditions intolerable in an effort to induce [her] to quit." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006). Thus, a plaintiff must allege (1) that her employer's actions were deliberate and (2) that a reasonable person would find the resulting work conditions intolerable. *See id.* Susdewitt argues that Powell has failed to satisfy the first element of the claim.

The parties agree that what constitutes a "deliberate" action is controlled by *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343 (4th Cir. 1995). In that case, the Fourth Circuit Court of Appeals clarified that an employer's intent may be proved by inference and that an employer "must

necessarily be held to intend the reasonably foreseeable consequences of its actions." *Id.* at 1354, 1355 (internal quotation marks omitted). Additionally, "[d]eliberateness can be proven by actual or circumstantial evidence, including evidence of actions that single out a plaintiff for differential treatment." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994). Courts have held that an employee's resignation may be the reasonably foreseeable consequence of an employer's refusal to take reasonable steps to remedy reported harassment. *Compare, e.g., Phillips v. Lynchburg Fire Dep't*, No. 6:16-CV-00063, 2017 WL 2424715, at *6 (W.D. Va. June 5, 2017) [6] (deliberateness found where plaintiff alleged employer took no action in response to complaints of harassment and instead failed to correct, participated in, and promoted the hostile work environment) *with Cronin v. S.C. Dep't of Corr.*, No. CA 3:11-471-MBS-SVH, 2013 WL 5315891, at *5 (D.S.C. May 14, 2013) (deliberateness not found where plaintiff's allegations indicated that employer took reasonable remedial action in response to plaintiff's complaints), *report and recommendation adopted in relevant part*, No. CA 3:11-471-MBS-SVH, 2013 WL 5315983 (D.S.C. Sept. 20, 2013). Indeed, to determine whether an inference of deliberate action is proper, courts look to whether an employer provided "a reasonably calculated response" to an employee's claims of harassment. *See Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1133 (4th Cir. 1995) (material issue of fact precludes summary judgment where evidence showed the employer investigated an employee's complaints, referred him to a psychologist, and offered to discuss his performance review, but did not discipline the alleged harasser).

In this case, Powell alleges that she "repeatedly reported the harassment" to her supervisors, who "refused to address" her complaints and in fact "often participated" in harassing

---

[6] Unpublished opinions are cited not for their precedential value but for the soundness of their reasoning.

her. (ECF 18 at ¶¶ 44–47). Additionally, Powell "notified the franchise owner . . . about the consistent sexual harassment" she was experiencing, and there are no allegations that the owner took any action in response. (*Id.* at ¶ 63). Powell's allegations about how Susdewitt responded to her complaints on the basis of religion are less consistent. On the one hand, she alleges that management at times granted her requests for accommodations and assigned personnel to help her coordinate a prayer schedule; on the other hand, she also alleges that management failed to take any action to resolve the complaints she filed and that they forbade her from praying inside their stores. (*Compare id.* at ¶¶ 63, 65 with *id.* at ¶¶ 64, 70). But even if Powell's allegations about how Susdewitt responded to her complaints with respect to her religion are not sufficient to establish deliberateness, her allegations that Susdewitt failed to respond to her complaints of sexual harassment combined with management's decision to participate in that harassment are sufficient to support an inference that Susdewitt acted deliberately. *See Amirmokri*, 60 F.3d at 1133; *Phillips*, 2017 WL 2424715, at *6. Given the sufficient overlap in discovery and potential proof, the claim for constructive discharge will be allowed to proceed based on both religious and sexual harassment.

Susdewitt's additional arguments on this point—that Powell may not rely on acts occurring before December 28, 2017, and that she does not adequately allege that others who were treated differently were similarly situated—are unavailing. As to the first argument, because Powell's hostile work environment claims will survive, the court is not restricted in looking only to discrete acts occurring within the 300 days preceding the filing of her EEOC charge. And as to the second argument, allegations of disparate treatment are but one means to support an inference of deliberate action. Powell need not rely on a disparate treatment theory given the substance of her other

allegations, which are sufficient on their own, at least at this stage of the proceedings, to show deliberateness.

Accordingly, the motion to dismiss will be denied as to Powell's constructive discharge claim.

## CONCLUSION

For the reasons stated herein, Susdewitt's motion to dismiss will be denied as to all claims. A separate Order follows.


__9/27/21__                                              _____/s/_____
Date                                                     Catherine C. Blake
                                                         United States District Judge